**Mark BOUNDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–10–00345–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 16, 2011.

Timothy A. Hootman, Houston, for Appellant.

Kurt Sistrunk, Roger L. Ezell, Criminal District Attorney, Rebecca Klaren, Assistant Criminal District Attorney, Galveston, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and BROWN.

## OPINION

HARVEY BROWN, Justice.

Appellant challenges his conviction for deceptive business practices.[1] After he pleaded not guilty, a jury found appellant guilty, and the trial court sentenced him to 365 days' confinement, suspended the sentenced, placed him on community supervision for two years, and ordered that he pay restitution of $10,200. In his sole issue, appellant challenges the legal sufficiency of the evidence to sustain his conviction. We conclude the evidence is legally insufficient. We therefore reverse and render a judgment of acquittal.

## Background

Candee Hoff owns a home in Galveston County that was damaged by Hurricane Ike. Hoff wanted to repair her home and to replace the flat roof with a peaked roof that contained an attic storage area. She retained an architect and engineering firm to prepare plans. Another contractor introduced Hoff to appellant, who was fully credentialed and bonded for the work in question. After inspecting the home and the engineering plans for the work, appellant made an oral offer to make the repairs and replace the roof for $36,000. On April 8, 2009, Hoff accepted the offer, even though appellant's bid was not the lowest she had received. Hoff paid appellant $12,000 up front. A few days later, appellant and Hoff signed a written agreement covering the repairs and addition, including "materials & labor," for the agreed price of $36,000. The contract did not specify that Hoff pay in advance, make interim payments, or pay upon completion of the work.

On April 13, a building permit was issued and appellant's crew began work. Appellant asked Hoff to purchase windows for the project. Hoff did so. On April 21, appellant requested an additional $12,000. Hoff paid $6,000 because appellant had only been working on the house for eight days. By July, Hoff had already paid appellant a total of $23,499.51 towards the full contract price of $36,000. In addition, Hoff purchased $7,135.51 worth of the construction materials herself because of appellant's complaints that the project was too costly. At appellant's request, she also directly paid $2,000 to a crew appellant hired to install plywood. Hoff testified that she paid appellant the additional money and purchased the additional materials because appellant said he would have to "pull his guys off the job" if she did not.

On July 28, appellant told Hoff he needed yet more money or she needed to purchase additional siding. By this time, Hoff had paid appellant $23,499.51 and directly paid $9,135.51 for materials or labor for the job, for a total of $32,635.02. Hoff refused. She told him she would finish paying him when the job was completed. She testified that she had paid more than 90 percent of the contract price, but she did not have walls, doors, insulation, or the

1. *See* Tex. Penal Code Ann. § 32.42(b)(2) (West 2003).

stairs to the storage area addition. Appellant told her that if she did not pay or purchase siding, he would pull his crew from the house. Hoff still refused to pay, and appellant pulled his crew. Hoff estimated that only 60 percent of the project had been completed. Hoff also testified that she did not change the plans or the terms of the agreement during the construction progress. Hoff had no complaints about the quality of the work.

On August 3, appellant returned to retrieve his tools from Hoff's property. She asked him to return a new saw she had purchased. When he refused, she asked him to leave. Appellant called the sheriff's office to help him retrieve his tools. An officer responded and, after talking to appellant and Hoff, told appellant to return the saw or he would call the district attorney's office. Appellant left and returned with a saw. He got the rest of his tools and left. The officer told Hoff she should see the district attorney, and the next day, August 4, she filed the complaint that led to this prosecution. The jury convicted appellant of selling less than the represented quantity of goods on August 4, 2009, the day after he pulled his crew.

## Standard of Review

This court reviews sufficiency-of-the-evidence challenges applying the standard of review enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See Ervin v. State*, 331 S.W.3d 49, 52–55 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd) (construing holding of *Brooks v. State*, 323 S.W.3d 893, 912, 927–28 (Tex.Crim.App.2010)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim.App.2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 320, 99 S.Ct. at 2786, 2789; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007); *see also Brown v. State*, 270 S.W.3d 564, 568 (Tex.Crim.App.2008) (stating jury is sole judge of credibility of witnesses and weight to give their testimony). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *see also Clayton*, 235 S.W.3d at 778 (reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination").

## Sufficiency of the Evidence

Appellant contends that the evidence is legally insufficient to sustain his conviction because it fails to establish that he had a culpable mental state.

■ The Texas Penal Code provides, "A person commits an offense if in the course of business he intentionally, knowingly,

[or] recklessly ... commits one or more of the following deceptive business practices: ... (2) selling less than the represented quantity of a property or service...." [2] TEX. PENAL CODE ANN. § 32.42(b)(2) (West 2003). Both the requisite criminal mental state and the prohibited act must be proven to convict the accused. *See Blackman v. State*, 349 S.W.3d 10, 16 (Tex.App.-Houston [1st Dist.] 2010, pet. granted) (person commits offense if person "engages in the proscribed conduct with the culpable mental state"). "Sell" and "sale" are defined to include "offer for sale, advertise for sale, expose for sale, keep for the purpose of sale, deliver for or after sale, solicit and offer to buy, and every disposition for value." TEX. PENAL CODE ANN. § 32.42(a)(9). Appellant does not challenge the sufficiency of the evidence of whether he sold Hoff less than he promised. His challenge solely addresses whether the evidence shows the necessary mental state at the relevant time.

■ The mental state criminalized is the state of mind that contemplates the prohibited result. *Haggins v. State*, 785 S.W.2d 827, 828 (Tex.Crim.App.1990). Here the statute includes the culpable mental states of intentionally, knowingly, and recklessly. "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged." TEX. PENAL CODE ANN. § 6.02(e) (West Supp. 2010). Thus, the State was required to prove at least recklessness.

■ A person acts recklessly with respect to his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE ANN. § 6.03(c) (West 2003). "The risk must be of such a

nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* A person's culpable mental state is generally shown by circumstantial evidence. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim.App.1998); *see also Tottenham v. State*, 285 S.W.3d 19, 28 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd) ("proof of a culpable mental state almost invariably depends on circumstantial evidence").

Appellant contends that the State had to prove that he had a culpable mental state of defrauding Hoff when he entered the contract, not later after he began the work, and there is no evidence of any culpable mental state at that time. Appellant specifically argues that the statute prohibits "selling" less than the represented quantity of property or service and that the sale in this case occurred when the contract was signed. Appellant cites no authority to support this proposition. The State responds that appellant's mental state at the time he entered the contract is irrelevant. Instead, the State argues that it was required "to prove appellant's intent at the time he had [Hoff's] money, but chose to no longer deliver his services." The trial court instructed the jury to find appellant guilty if it found beyond a reasonable doubt that he intentionally, knowingly, or recklessly sold less than the represented quantities of a good or service on August 4, 2009, the day he walked off the job.

■ We, however, do not address this specific issue, because we conclude the evidence is insufficient to show appellant had a culpable mental state at either time. To prove appellant's guilt, the State was re-

**2.** Section 32.42(b) includes the culpable mental state of criminal negligence. *See* TEX. PENAL CODE ANN. § 32.42(b)(2) (West 2003). The

jury charge, however, only listed the mental states of intentional, knowing, or reckless.

quired to present evidence of circumstances from which a rational jury could infer that appellant acted at least recklessly—that is, that appellant was aware of but consciously disregarded a substantial and unjustifiable risk that the result (here the sale of less than the represented quantity of property or services) would occur. *See* TEX. PENAL CODE ANN. §§ 6.03(c), 32.42(b)(2). To determine whether conduct is reckless, we must look to: (1) whether the act, when viewed objectively at the time of its commission, created a "substantial and unjustifiable" risk of the type of harm that occurred, (2) whether that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation, (3) whether the defendant was consciously aware of that risk, and (4) whether the defendant consciously disregarded that risk. *See Williams*, 235 S.W.3d at 755–56. In other words, the State was required to prove that appellant "actually fore[saw] the risk and consciously decide[d] to ignore it." *See id.* at 751–52 (it is that "devil may care" or "not giving a damn" attitude that raises conduct from criminal negligence to recklessness).

First, we note that there is no evidence, direct or circumstantial, suggesting that appellant had a culpable state of mind at the time he entered the agreement with Hoff. Within days of receiving the first payment, he presented Hoff with the written agreement. He also got a building permit and began work. There is no evidence that his finances were such to require him to receive an immediate infusion of cash through a one-third advance payment or that he obtained the contract through an inordinately low bid. A rational juror could not infer from these circumstances that, at that time, appellant did not intend to perform under the contract.

Concerning appellant's state of mind on August 4 when he walked off the job, the State did prove that appellant, having received approximately 90% of the contract price, did only approximately 60% of the work. Nothing in the record, however, supports a reasonable inference that appellant was consciously aware of a "substantial and unjustifiable" risk that the contract would not be completed and the services delivered at that time. The contract was silent concerning when Hoff had to pay for the services rendered. The evidence does not show the amount of the money requested by appellant to pay for siding at the end of July or the amount of additional siding needed for the project. At that time, another $3,364.48 was still outstanding on the agreed contract price. The record does not show that appellant was demanding more money than he was due under the parties' agreement. Nor does the record show any discussion between appellant and Hoff in which appellant requested additional payment beyond the contract price.

Additionally, while the work may have only been 60% complete, there was no evidence on the cost to complete the project; the most expensive labor-intensive portion of the project or the materials that were the most expensive may have been part of that 60%. Although construction work was ongoing at the time of trial, there was no evidence of the costs incurred for the repairs and the addition. There was no evidence regarding the costs to complete the siding or other work started by appellant. Hoff also did not know whether her engineer had modified the plans used for the contract and testified that her engineer might not have notified her of modifications. The engineer admitted some changes were necessary after construction began. He stated there were "no major discrepancies" and did not identify any discrepancies or estimate the cost

of correcting any discrepancy. The contract did not provide details on the work to be performed by appellant. During construction of the project, appellant made various repairs required by Hoff's engineer. Appellant also called the appropriate government building inspector for permit inspections, made changes as required by the inspector, and was working with the inspector to ensure everything passed inspection. Hoff admitted that appellant installed three windows that were not covered by the written contract but the costs associated with that additional work were not in the record. There is no evidence that appellant intentionally underbid the project, with the design of seeking additional payments above the contract price once the work was underway. In fact, the record shows that appellant's bid was not the lowest that Hoff received.

The record in this case contains no evidence, or even a "modicum" of evidence, that appellant with at least a mental state or recklessness sold less than a represented quantity of a property or service. It is, therefore, insufficient to sustain his conviction. *See Jackson*, 443 U.S. at 314, 320, 99 S.Ct. at 2786, 2789.

We sustain appellant's first issue.

## Conclusion

We reverse the judgment of the trial court and render a judgment of acquittal.