**AFFIRM; and Opinion Filed June 12, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00031-CR**

**SETH EARL DORRIS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-81291-2011**

## MEMORANDUM OPINION

Before Justices Moseley, O'Neill, and Lewis
Opinion by Justice Lewis

Appellant Seth Dorris was charged by indictment with the murder of Jonathan Bird. He was fifteen years old at the time of the offense, but was certified to stand trial as an adult. Appellant waived trial by jury and pleaded not guilty before the trial court. The trial court convicted him of the lesser-included offense of manslaughter and sentenced him to twenty years in prison. In one issue, appellant challenges the sufficiency of the evidence to support his conviction.

The background and facts of the case are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the judgment of the trial court.

# BACKGROUND

At trial, Jason Smith, a patrol officer with the Wylie Police Department, testified that around midnight on November 7, 2009, he was dispatched to 301 South Third Street, Wylie, Texas, in response to a 911 call reporting an assault. When he arrived at the address, he found four people at the scene: two juveniles, fourteen-year-old Blake Martinez and fifteen-year-old Jordan Jones; one adult, Vince Walters; and the deceased, Jonathan Bird. Officer Smith observed Bird lying on his back on the ground, with his upper body and head on the curb and grass, and his legs in the road. Officer Smith observed that Bird had extensive head trauma and was bleeding from the nose and mouth. Bird was not breathing.

Once EMS arrived on the scene to care for Bird and transport him to the hospital, Officer Smith secured the crime scene. He testified that he talked to the witnesses and gave them voluntary witness statement forms to fill out. Once Bird was pronounced dead, detectives from the Wylie Police Department came to the scene and took charge of the investigation. Based on witness statements, the police obtained the names of two of the suspects, Seth Dorris and Ethan Dorris, and a description of an older model four-door Dodge pickup truck.

Jordan Jones, Blake Martinez, and Vincent Walters testified at trial. Jones testified that he had known appellant since fourth grade. Martinez testified he had known appellant since seventh grade. Jones and Martinez were best friends, Bird and Walters were best friends, and Bird and Codi Duer (Martinez's mother) were engaged to be married. On the night in question, Jones, Martinez, Bird, and Walters went fishing at Lake Lavon. They returned to the house at 301 South Third Street around 11:30 p.m. and began unloading their fishing gear in the driveway. Around midnight, a pickup truck sped around the corner. Bird shouted at the driver to slow down and the driver of the truck stopped and backed up. Bird and the driver shouted at each other and Jones heard the driver threatened to return with friends and an "AK." When the

driver drove off, he ran over Bird's foot and Bird elbowed the truck. A few minutes later, the same pickup truck returned. This time, appellant was in the truck and was leaning out of the front passenger window. The driver parked the truck by Bird's driveway, and appellant shouted at Bird. He and Bird yelled at each other, and then the truck drove off again.

Five minutes later, the truck returned, parked across the street, and appellant and four other young men got out. Appellant and his companions started yelling at Bird and Bird moved from the driveway to the street, yelling back at them. When Bird looked away, appellant hit Bird in the face. Bird stumbled and fell. Appellant jumped on top of Bird and hit him repeatedly in the head. Then all the young men with appellant jumped on top of Bird, hitting and kicking him. Neither Jones nor Martinez saw Bird kicking or hitting back. Jones and Martinez also testified that they did not get involved in the fight. Walters, who was talking on his cell phone and did not notice when the fight began, finally realized what was happening and dove into the attackers to get them off Bird. Four of the young men ran back to their truck, but appellant stayed on top of Bird and continued hitting him. Walters pulled appellant off of Bird and pinned him down. A couple of appellant's companions got out of the truck, knocked Walters off of appellant, grabbed appellant, and pulled him back to the truck. Jones called 911 for help. Bird took four or five breaths and then stopped breathing completely.

One of appellant's co-defendants, Sandy Matijevic, testified against appellant at trial. He pleaded guilty to the charge of aggravated assault with a deadly weapon and was placed on juvenile probation as a result of the offense. Matijevic was sixteen years old at the time of the offense. That day, Matijevic was hanging out with friends, smoking marijuana and drinking beer. The friends included appellant, appellant's brother Ethan Dorris, Austin Brumley, and Travis Harmon. Harmon left at one point to visit his girlfriend and came back upset, saying he had a confrontation with someone while he was driving home. Harmon and appellant left again

to get cigarettes. While they were out, they drove by the place where Harmon had the confrontation. Appellant and Harmon returned very angry and claimed they had been attacked at the same house by several older men who hit appellant and threw a taco at Harmon. Appellant wanted to go back with everyone to fight, so they all got in Brumley's truck and drove back to the house.

When they got to Bird's house, Matijevic claimed that either Bird or Walters yelled "Crypt" and appellant yelled back "Blood," which was a signal that there was going to be a fight. Appellant hit Bird in the head, and they started fighting. Matijevic testified that Bird tried to hit him so he hit Bird in the head. Walters grabbed appellant and was fighting with him on the grass. Ethan Dorris was on the ground, fighting with Bird. Harmon ran to help appellant fight with Walters. At this point, Brumley walked back to the truck and grabbed a hammer from the bed of the truck. Matijevic saw Brumley hit Bird twice with the hammer. Harmon, Matijevic and Brumley got back in the truck. Ethan Dorris joined them but then got out of the truck to go get his brother. Appellant was the last person to get in the truck. Matijevic said they were all bragging about the fight as they drove away.

Dr. Sheila Spotswood, a medical examiner for Collin County, performed Bird's autopsy. She testified that Bird had numerous injuries to his face and head, including two black eyes, cuts and abrasions, and significant bruising and swelling behind his left ear. He had a small C-shaped laceration or split on his left temple, and C-shaped abrasions on his torso and right ankle, consistent with being caused by a hammer. There was no bruising or swelling on his hands.

The most significant injuries were to Bird's brain. There were multiple areas of hemorrhaging and a large area of hematoma or bruising with a blood clot behind the left mastoid area below the left ear. Dr. Spotswood did not believe these hemorrhages were caused by a hammer because there were no accompanying skull fractures. However, she agreed that this type

of injury could be caused by someone punching or kicking the victim in the head. Dr. Spotswood also found two bruises deep inside the middle portion of Bird's brain. She testified that it takes significant force to cause those types of bruises. She also discovered a laceration of Bird's brainstem, a very significant injury that required a great deal of force and is usually seen when a pedestrian is struck by a car and then thrown onto the ground. Dr. Spotswood testified that Bird died of blunt force injuries. She elaborated that the injuries to Bird's torso did not cause his death; his death was caused by the severe injuries to his head and neck. Dr. Spotswood testified that she could not determine whether his death was caused by the brain contusion, the large hemorrhage behind his ear, or the brainstem laceration.

Appellant was charged by indictment with the murder of Bird and was certified to stand trial as an adult. He waived a jury and pleaded not guilty before the trial court. The trial court convicted him of the lesser-included offense of manslaughter and sentenced him to twenty years in prison. Appellant filed combined motions for new trial and in arrest of judgment, which were overruled by operation of law. This appeal followed.

## APPLICABLE LAW

### A. Sufficiency Of The Evidence Standard of Review

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact is

the sole judge of the witnesses' credibility and the weight to be given their testimony and therefore, is free to accept or reject any or all evidence presented by either side. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). We defer to the trial court's determinations of witness credibility and weight of the evidence, and may not substitute our judgment for that of the fact finder. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

## B. Manslaughter

A person commits manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE § 19.04 (West 2011). A person acts recklessly with respect to his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. TEX. PENAL CODE § 6.03(c) (West 2011). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id*. To determine whether conduct is reckless, we consider whether: (1) the act, when viewed objectively at the time of its commission, created a "substantial and unjustifiable" risk of the type of harm that occurred, (2) that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation, (3) the defendant was consciously aware of that risk, and (4) the defendant consciously disregarded that risk. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In other words, the State was required to prove that appellant "actually fore[saw] the risk involved and consciously decide[d] to ignore it." *Id.* at 751–52 (it is that "devil may care" or "not giving a damn" attitude that raises conduct from criminal negligence to recklessness).

Proof of a culpable mental state generally relies upon circumstantial evidence. *Lincoln v. State*, 307 S.W.3d 921, 924 (Tex. App.—Dallas 2010, no pet.); *Bounds v. State*, 355 S.W.3d 252,

–6–

255 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Circumstantial evidence alone can suffice to support a verdict. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## DISCUSSION

In one issue on appeal, appellant argues the evidence is legally insufficient to support his conviction for manslaughter because testimony by the State's eye-witnesses proved appellant never had physical contact with the victim, and testimony by police officers raised serious doubts about the events of the street brawl that resulted in the victim's death. Appellant first argues that testimony by Jordan Jones "was so unreliable that no rational trier of fact could have found from such that Appellant recklessly caused the death of Jonathan Bird." In support of his argument, appellant points to Jones's testimony that he "blacked-out" during the street fight, and his testimony was influenced by what Martinez told him the following day. The State disputes appellant's characterization of witness testimony and asserts appellant's complaints merely challenge the trial court's determinations of witness credibility and the weight to be placed on their testimony. The record reflects that Jones gave the police written and oral statements on the night of the offense, before talking to Martinez. His written and oral statements were consistent with his trial testimony.

Appellant next argues that testimony by Blake Martinez was not credible because Martinez testified he had no involvement in the street fight, but Sergeant Larocca, a detective with the Wylie Police Department, testified that the investigation proved that Martinez had appellant in a chokehold. According to the record, Sergeant Larocca testified that his investigation led him to believe that either Jones or Martinez had appellant in a chokehold out in the street. Sergeant Larocca later clarified, stating "the information I was told, Blake Martinez." He also explained he did not personally interview any of the witnesses and his testimony was based on police reports of interviews with different witnesses, including co-defendants. The

–7–

State disputes appellant's characterization of Martinez's testimony and argues the trial court was not required to credit unconfirmed hearsay accounts that merely suggested a potential inconsistency in Martinez's statements.

Appellant then argues that the State's own witnesses proved appellant never made physical contact with Bird, based on Vincent Walters's testimony that appellant swung at Bird and missed. According to the record, Walters testified that appellant swung once at Bird and missed, and then it just escalated. Walters testified that appellant hit Bird over and over and then "they just all jumped on top of him." Jones and Martinez both testified that appellant punched Bird in the face to start the fight. After Bird was lying on the ground, appellant continued hitting and kicking him until he was pulled away by his brother. Matijevic, a co-defendant, testified that appellant was all riled up, was angry, and wanted to go fight. Matijevic testified that appellant threw the first punch, hitting Bird in the head to start the fight. He also testified that appellant was the most aggressive in hitting Bird. This evidence is legally sufficient to permit an inference by the trial court that appellant was aware of, but consciously disregarded, a substantial and unjustifiable risk that striking Bird in the face and head with his fists, and kicking Bird in the head, could result in injuries that could cause death. *See Milam v. State*, No. 08-04-00354-CR, 2006 WL 304528, at *5 (Tex. App.—El Paso Feb. 9, 2006, pet. ref'd) (not designated for publication) (jury could reasonably conclude the defendant was aware of, but consciously disregarded, a substantial and unjustifiable risk that striking the victim on the side of the head with a closed fist could cause his death).

Dr. Sheila Spotswood testified that blunt force trauma to Bird's head and neck caused his death. She testified that the injuries to his head were caused by extreme force. She also testified that his injuries could have been caused by someone kicking or hitting him in the head.

As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the trial court was free to accept or reject any or all evidence presented by either side, and to draw reasonable inferences from basic facts to ultimate facts. *Isassi*, 330 S.W.3d at 638; *Lancon*, 253 S.W.3d at 707. The trial court could have reasonably concluded that appellant engaged in reckless conduct that caused Bird's death, and that he perceived the risk but consciously disregarded the risk that his conduct would cause Bird's death. The escalation of the confrontation to the increasingly violent blows and kicks to Bird's head, coupled with appellant's apparent anger and demeanor when he inflicted the blows, supports the trial court's conclusion that appellant engaged in reckless conduct that caused Bird's death. Having examined all the evidence in the light most favorable to the verdict, we conclude that the trial court could have found the essential elements of the offense of manslaughter beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. Appellant's sole issue is overruled.

## CONCLUSION

Having overruled appellant's sole issue, we affirm the judgment of the trial court.

/David Lewis/
DAVID LEWIS
JUSTICE

Do Not Publish
Tex. R. App. P. 47

120031F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SETH EARL DORRIS, Appellant

No. 05-12-00031-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-81291-2011.
Opinion delivered by Justice Lewis.
Justices Moseley and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of June, 2013.

/David Lewis/

DAVID LEWIS
JUSTICE