**Opinion issued October 8, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00538-CR
_____

**RICARDO ROMANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 6**
**Harris County, Texas**
**Trial Court Case No. 2167075**

---

## MEMORANDUM OPINION

On an August morning in a remote part of Houston's Memorial Park, a police officer on mounted patrol with a body camera was intentionally concealing himself and his horse behind bushes and trees as he observed the nearby park area and a parking lot. Around noon, and with no park patrons visible, a car driven by

appellant Ricardo Romano exited the park road, entered the empty parking lot, and parked at the back of the parking lot parallel to the roadway.

Romano got out of his car, walked around the back of it, and opened the front passenger door. The officer briefly observed Romano and then notified his partner by radio that Romano was masturbating. The officer rode toward Romano, handcuffed him, and told him that he was being arrested for indecent exposure. Romano apologized and responded that he was just going to urinate because he had been drinking a lot from a huge jug of water in his car and he "needed to pee."

Romano was charged by information that he unlawfully exposed his genitals to the officer with the intent to arouse and gratify Romano's sexual desire and that Romano was reckless about whether another person was present who would be offended and alarmed by the act, in that he masturbated in a public park. *See* TEX. PENAL CODE § 21.08(a).

At the conclusion of a bench trial, the court found Romano guilty of the Class B misdemeanor offense of indecent exposure and assessed a sentence of three days in county jail, as well as a $1,000 fine. Also, Romano was ordered to register as a sex offender for ten years.

Romano asserts three issues on appeal: (1) the evidence is insufficient to support his conviction for indecent exposure; (2) the trial court erred in admitting the testifying police officer's personal opinion that Romano was masturbating; and

(3) he was denied effective assistance of counsel at the guilt-innocence stage when defense counsel mentioned, elicited, and failed to object to testimony about and references to his inadmissible prior conviction.

Because the evidence is insufficient, we reverse Romano's conviction and render a judgment of acquittal.

## Background

The State's evidence consisted of the testimony of Houston Police Department Sergeant Ryan Gardiner and video footage from Gardiner's body camera. Romano testified on his own behalf.

On the morning of Wednesday, August 23, 2017, Gardiner was on mounted patrol in a part of Memorial Park known as the Picnic Loop. He, his partner, and their horses had arrived there around 10:00 a.m. that morning. Gardiner and his partner were stationary "for the most part" and were "mainly concealed." Gardiner was there to look for "certain crimes"; primarily, he looked for cars circling the area and for cars parking in the back of the park. Gardiner estimated that he had been concealed in the bushes and trees since around 10:30 a.m., and from then until the time of Romano's arrest at 12:10 p.m., he had not witnessed any crimes or participated in any arrests.

Around noon, Gardiner saw Romano drive into the parking lot that he had been observing and park his car. Gardiner added that from where he was concealed

3

in the trees and bushes, he had a good vantage point and line of sight toward the parking lot. The video from Gardiner's body camera shows that there was an opening in the trees and bushes and that there was an open park area with some picnic tables between Gardiner and the parking lot.

At one minute and twenty-five seconds into Gardiner's video, Romano's car can be seen exiting the park road and turning into the parking lot. At that point, Gardiner raised his binoculars and looked toward Romano's car for just four seconds and then lowered his binoculars. On cross-examination, Gardiner admitted that this four-second observation was the only time that he used his binoculars to observe Romano.[1] On the video, Romano's car can be seen driving into the parking lot for about fifteen seconds before bushes and trees obstruct the camera's view of the car.[2]

The video shows that, after lowering his binoculars, Gardiner observed Romano's car and Romano for the next fifty-five seconds. Because the bushes and trees were obstructing the camera's view, Romano and Romano's car cannot be seen on the video in that time frame, which is when Gardiner testified that Romano

---

[1]    Gardiner testified that he wrote in his report that he "also used binoculars to watch the suspect" but admitted that he did not watch Romano with binoculars while Romano was allegedly masturbating—the only time he used binoculars was before Romano got to the parking lot.

[2]    According to Gardiner, Romano's parking his car in the parking lot "was suspicious" because "there's very few reasons to park back there." Gardiner did not elaborate further on why a car's parking in the parking lot of a public park at noon on a summer day was suspicious.

4

got out of his car, walked around his car, and began masturbating. During that fifty-five seconds of surveillance, no pedestrians or park patrons are visible. At the video's two-minute mark, Gardiner's body camera's audio came on.

At two minutes and twenty-four seconds into the video, Gardiner summoned his partner on his radio, telling him to "come this way" and that Romano was masturbating. Gardiner's partner was at a nearby location on the other side of the parking lot and could not see Romano.

Gardiner testified that, from his vantage point, after Romano parked his car, he saw Romano get out and walk around the back of his car to the other side, open the front passenger door, and then walk to the back of his car. Gardiner said that he then saw Romano, who was wearing "jogging shorts," pull down the top of his shorts with one hand and start masturbating with his other hand.

During Gardiner's radio communication with his partner, Gardiner's horse begins to move forward toward Romano, and at two minutes and twenty-seven seconds into the video, Romano's parked car can be seen for the first time on the video because the camera's view of it is no longer being obstructed by the bushes and trees. Gardiner's horse then begins going at a trot or canter toward Romano, who cannot be ascertained on the video until two minutes and forty seconds into

5

the video because of the original distance between Gardiner and Romano and the camera's movement caused by the horse's movements.[3]

When Romano is first ascertainable on the video, he is on the passenger side of his car with the front passenger door open and is standing near the open door. The car's passenger side is facing away from the roadway and parking lot and is approximately ten feet from a dense area of bushes and trees.

The video shows Gardiner stopping his horse approximately ten yards from Romano's car, dismounting, and walking up to Romano. Gardiner then tells Romano to place his hands behind his back and begins to handcuff him. Romano complies but asks, "What's happening?" Gardiner responds, "You're under arrest for indecent exposure." Romano then exclaims with an incredulous tone, "What?" Gardiner replied, "I watched you from over there; I have a camera." Romano then exclaimed to Gardiner, "I was gonna pee. I'm sorry; I really needed to pee." He explained to Gardiner that there was a jug of water in his car and that he had been

---

[3] Gardiner did not testify what the distance was from his concealed location to Romano's car. The elapsed time that it took for Gardiner's horse, once it started walking and then trotting or cantering toward Romano, to come to a stop near Romano's car was approximately eighteen seconds. Because of the quality of the video and the dearth of testimony on Gardiner's distance from Romano, we would have to speculate about the distance, but we can say that it appears to be less than a football field (100 yards). Romano testified that the officer was fifteen to twenty feet away, but it is unclear whether that distance was where the officer was hidden in the trees and bushes or where the officer and horse were when Romano first noticed them. From our review of the video, we can say with certainty that the officer's hiding place was much more than fifteen to twenty feet away from Romano's location.

drinking a lot of it, but Gardiner replied that he saw what Romano was "doing" and then asked him why he did not use the park restroom across the street to urinate. Romano replied that he did not like those restrooms and repeated that he "just needed to pee" and kept apologizing while intermittently laughing incredulously. Gardiner again said to him, "Well, I saw you from over there, and you weren't peeing." Romano replied, "I was getting ready to and I saw your horse and I said, 'Oh my god, what the hell is that?'"

Gardiner then asked Romano why he was going to pee where he was: "So, why are you doing that here, though?" Romano, who was compliant and cooperative throughout the approximately thirty-four minutes he is on the video, answered that he needed to pee, adding that the park restrooms are "smelly." Romano repeated that there was a huge jug of water in the front seat that he had been drinking from. The video shows that when Gardiner searched the front of Romano's car, a large plastic water bottle is visible on the front passenger seat.

Gardiner testified that he did not believe that Romano was urinating because he saw him masturbating and because there was no urine on the ground. Gardiner said that he was "sure" that Romano was masturbating. He admitted on cross-examination that Romano did not have any lubricant on his hands or in his car. Gardiner also did not find any aphrodisiacs or pornography in Romano's car.

The video depicts that Gardiner, while making notes and questioning Romano, stated to Romano, "So, I'm sitting over in the woods. I got a body camera. I got binoculars, and I see . . . ." At that point, Romano interrupts Gardiner and implores him three times within seven seconds to "please look at your body camera." Gardiner continued, "I saw you take it out and, like, kind of start messing with it. It looked like you were masturbating." Romano replied with an incredulous tone, "No. By myself?"

About forty seconds later, as Gardiner is walking away from him, Romano again states, "But look at the video camera, please." Gardiner replies, "I mean, it's gonna show what you did." Because of the distance and the camera's obstructed view, the video does not show Romano at all when he is allegedly masturbating.

Gardiner testified that he believed he was the only person who saw Romano masturbating. On cross-examination, Gardiner stated that there was a bike trail about a "hundred or so" feet in front of Romano's parked car, but he admitted that because of where Romano's car was parked and with the passenger door open, Romano's car "may have blocked" a view of Romano from the bike trailhead.

Also on cross-examination, Gardiner stated that no one other than Romano was in the parking lot and that the nearest parking lot where someone might be parked was an estimated quarter-mile away. He also later testified that, from his hidden vantage point, he could not see any people in the area at the time that

8

Romano was masturbating, and he admitted on re-cross-examination that no one was on the street to have seen Romano masturbating. On further redirect examination, Gardiner clarified that any pedestrians, cyclists, or motorists "could have possibly had a vantage point" to see Romano where he was masturbating. Gardiner had earlier testified on direct examination that there was a risk that anyone could have seen Romano masturbating.

Romano, who was age 48 at the time of trial, testified that he worked in construction remodeling. He had bought a truck for his construction business, and the truck needed license plates. He explained that he had just obtained bond papers to be able to get the truck's license plates, and before he went downtown to get the license plates, he stopped in Memorial Park to read over the papers to make sure that they were correct.

Romano testified that he parked his car at the very edge of the parking lot, parallel to some bushes and in the shade with nobody around, and that he decided to urinate there between his car and the bushes. He admitted that he took out his penis but said that he did so to urinate. Romano also admitted that when he got out of his car and took out his penis, he saw movement in the bushes—he just saw branches moving, not the horse—where Gardiner eventually came from, but he did

not know what the movement was.[4] He also testified that, while he "suspected" someone was behind the moving bushes, nobody was around and he did not feel like he was being reckless.

## Sufficiency of the Evidence

In his first issue, Romano asserts that the evidence is insufficient to support the trial court's guilty finding for two reasons. First, he contends that the evidence is insufficient to establish that he exposed his genitals with intent to arouse or gratify the sexual desire of any person; that is, he exposed his genitals not to masturbate, but to urinate. Second, Romano argues that the evidence is insufficient to establish that he was reckless about whether another was present who would be offended or alarmed by the act.

In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). We determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence

---

[4]     The video depicts that, while Romano's car is parking and he is getting out of his car, Gardiner's horse is eating leaves on the branches of a small tree and causing the branches to move.

conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Johnson v. State*, 425 S.W.3d 516, 519–20 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Bounds v. State*, 355 S.W.3d 252, 254 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

As an appellate court, we do not weigh the evidence or assess its credibility. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). "As a reviewing court, we may not reevaluate the weight and credibility of the evidence in the record and thereby substitute our own judgment for that of the factfinder." *Braughton*, 569 S.W.3d at 608. But it is our role to determine "whether the necessary inferences made by the trier of fact are reasonable, based on the cumulative force of all the evidence." *Id.* (quoting *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim App. 2011)). Also, a factfinder "is not permitted to disregard undisputed objective facts that can support only one logical inference." *Id.* at 611.

A person commits the offense of indecent exposure if he: (1) exposes his anus or any part of his genitals; (2) with intent to arouse or gratify the sexual desire of any person; and (3) is reckless about whether another is present who will be

11

offended or alarmed by the act. TEX. PENAL CODE § 21.08(a); *State v. York*, 31 S.W.3d 798, 802 (Tex. App.—Dallas 2000, pet. ref'd).

Romano does not dispute that he exposed his genitals. He admitted on the video and at trial that he exposed his penis but that he did so because he was going to urinate.[5] But in admitting that he exposed his genitals—albeit to urinate—he contends on appeal that he was not reckless in doing so.

A person is reckless with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial risk that the circumstances exist or the result will occur. TEX. PENAL CODE § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

> To determine whether conduct is reckless, we must look to:
> (1) whether the act, when viewed objectively at the time of its commission, created a "substantial and unjustifiable" risk of the type of harm that occurred, (2) whether that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation, (3) whether the defendant was consciously aware of that risk, and (4) whether the defendant consciously disregarded that risk.

---

[5] *Cf.* TEX. PENAL CODE § 42.01(a)(10) (providing that offense of disorderly conduct is committed if the person: (1) exposes his anus or genitals in a public place; and (2) is reckless about whether another is present who will be offended or alarmed by his act).

*Bounds*, 355 S.W.3d at 256 (citing *Williams v. State*, 235 S.W.3d 742, 755–56 (Tex. Crim. App. 2007)). The objective standard of recklessness is viewed through the eyes of the ordinary person standing in the defendant's shoes. *Hefner v. State*, 934 S.W.2d 855, 857 (Tex. App.—Houston [1st Dist.] 1996, pet ref'd).

Indecent exposure cases—especially those occurring in public parks—that address the sufficiency of the evidence on the recklessness element involve a common feature lacking in this case: the defendant's knowledge or awareness of another person's presence. *See McNeal v. State*, No. 06-15-00010-CR, 2015 WL 5145228, at *3 (Tex. App.—Texarkana Sept. 2, 2015, no pet.) (mem. op., not designated for publication) (holding evidence sufficient on recklessness where defendant was masturbating in public park in presence of other people and complainant, who was jogging nearby in plain sight); *Jenson v. State*, No. 14-07-00093-CR, 2008 WL 3833806, at *6–7 (Tex. App.—Houston [14th Dist.] Aug. 19, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that defendant's intentional exposure of his genitals to undercover officer in unsecluded wooded area near public restroom in Memorial Park, just moments after two males had walked by, was sufficient evidence of recklessness); *Young v. State*, 976 S.W.2d 771, 774 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (holding evidence of recklessness was sufficient where defendant exposed his penis to police officer behind public rest area, testimony indicated that trails in park area

behind rest area were trampled, and defendant admitted another man walked behind rest area while defendant was "back there" and he spoke with man); *Hefner*, 934 S.W.2d at 856–58 (holding evidence on recklessness was sufficient where defendant placed his penis in hole in wall at adult theater booth, knowing that someone was in adjoining booth, because a rational factfinder "could have concluded that appellant was reckless because, as far as he knew, the other person was present simply to watch a movie, not to see his body"); *see also Smith v. State*, 309 S.W.3d 10, 12 (Tex. Crim. App. 2010) (addressing sufficiency of information's recklessness allegation in case where undercover officer was conducting sting operation in Houston's Memorial Park, and defendant exposed his penis and began masturbating in front of officer after he looked around to make sure they were alone); *McCoslin v. State*, 558 S.W.3d 816, 821 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) ("By requesting that the complainant [hotel clerk] enter the hotel room where appellant exposed his genitals and masturbated, appellant was reckless as to the presence of another person who would be offended or alarmed by appellant's act.").

The evidence in this case differs from the above cases in several significant respects. *See Friedsam v. State*, 373 S.W.3d 817, 820–21 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (comparing other cases in which evidence was sufficient to support conviction for same offense and then reversing for insufficient

14

evidence); *Johnson*, 425 S.W.3d at 521–24 (same). It is undisputed that Romano parked his car in an empty parking lot in a remote part of Memorial Park and that there were no other persons visible or present, except for Gardiner, who was intentionally concealing himself from Romano's view. Romano got out of his car and walked around the back of it to the passenger side, opened the front passenger door, and then walked toward the back of his car.

Romano testified that he parked his car at the very edge of the parking lot, parallel to some bushes and in the shade with nobody around. The video confirms this testimony. Romano testified that his car, as well as the car door, was shielding him from areas where pedestrians and other cars may have passed by. Gardiner testified that there was a bike trail about a "hundred or so" feet in front of Romano's parked car and admitted that because of where Romano's car was parked and with the open passenger door, Romano's car "may have blocked" a view of Romano from the bike trailhead.

During Gardiner's fifty-five seconds of surveillance of Romano, no pedestrians or park patrons are visible on the video. Gardiner testified that no one other than Romano was in the parking lot and that the nearest parking lot where someone might be parked was an estimated quarter-mile away. He also testified that, from his hidden vantage point, he could not see any people in the area at the time that Romano was exposing himself, and he admitted that no one was on the

15

street to have seen Romano. Gardiner, who was admittedly hiding from Romano, believed that he was the only person who saw Romano expose himself.

The undisputed, objective evidence is that Romano made deliberate efforts to shield himself from the view of others and that Romano was unaware that Gardiner was hiding a good distance away in the trees and bushes.[6] A person who makes deliberate efforts to go to a remote area and shield himself from public view cannot be said to be acting recklessly. *See Hines v. State*, 906 S.W.2d 518, 522 (Tex. Crim. App. 1995) (affirming appellate court's reversal of public lewdness conviction because State did not prove appellant was reckless about presence of another, as "appellant had deliberately selected an isolated spot, 'deep in the woods,' where his conduct would not be observed by others."). A factfinder "is not permitted to disregard undisputed objective facts that can support only one logical inference." *Braughton*, 569 S.W.3d at 611. We conclude that the evidence of Romano's making deliberate efforts to shield himself from the view of others, his unawareness of the hidden Gardiner, and the absence of any other person is undisputed, objective evidence that supports only one logical inference—that Romano was not disregarding a substantial risk that someone might see him

---

[6]     Romano speculated that, when he took out his penis, someone might be behind the moving branches where Gardiner eventually came from, but he did not know what the movement was, and he emphasized that nobody was around and that he did not feel like he was being reckless. We cannot say that this speculative possibility is the evidentiary equivalent of a conscious disregard of a substantial risk that another person was present.

16

expose himself. *See Hines*, 906 S.W.2d at 522; *Bounds*, 355 S.W.3d 255–57 (reversing conviction because evidence did not support reasonable inference that defendant was reckless); *Simpson v. State*, No. 01-11-00718-CR, 2012 WL 1249524, at \*3 (Tex. App.—Houston [1st Dist.] Apr. 12, 2012, no pet.) (mem. op., not designated for publication) (same); *see also Johnson*, 425 S.W.3d at 524 (reversing conviction because evidence did not support reasonable inference that defendant had intent to defraud). Therefore, we conclude that a rational trier of fact could not have found beyond a reasonable doubt that Romano was reckless about whether another was present who would be offended or alarmed by Romano's exposure of his genitals. We sustain in part Romano's first issue. Having sustained in part Romano's first issue, which requires rendition of a judgment of acquittal, we need not address the remainder of Romano's first issue or his other two issues. *See* TEX. R. APP. P. 47.1.

## Conclusion

We reverse the trial court's judgment of conviction and render a judgment of acquittal.

Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).