

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00121-CR

EDWARD JOSEPH MOYA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 276th District Court
Titus County, Texas
Trial Court No. 17,479

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

# O P I N I O N

Edward Joseph Moya, convicted of the manslaughter death[1] of Jocelyn Roberts, was sentenced to ten years' incarceration in the Texas Department of Criminal Justice–Correctional Institutions Division. On his appeal, Moya raises two complaints: (1) he maintains that there was an unnecessary delay by the law enforcement officers who arrested him before they took him before a magistrate, and (2) he posits that the evidence that he acted recklessly is not legally sufficient to sustain his conviction.

**Circumstances Giving Rise to Charges**

As thirteen-year-old Jocelyn and four-year-old Kameron Jones attempted to cross Jefferson Avenue in Mount Pleasant (a busy four-lane street with a center turning lane) late at night[2] after leaving the Cinema 6 movie theater, they were both struck by a speeding automobile and were, tragically, slain as a result. The two were among a group who apparently planned to visit the McDonald's restaurant, located across Jefferson Avenue from the Cinema.[3] Jocelyn, Kameron, and a third child stepped off of the curbed parking lot of Cinema 6, preparing to cross the heavily-trafficked thoroughfare. While Jocelyn and Kameron ventured to cross, the third child stepped back onto the curb. Traffic in both southbound lanes slowed and came to a stop as Jocelyn and Kameron navigated their way across each lane. The two reached the center turn lane

---

[1] TEX. PENAL CODE ANN. § 19.04 (West 2011).

[2] The accident happened at approximately 11:00 p.m. on Saturday, May 7, 2011.

[3] Jefferson Avenue, a north/south street, is also known as U.S. Highway 271.

separating northbound and southbound traffic and waited there for northbound traffic to abate a bit prior to crossing those two lanes.

After Jocelyn and Kameron reached the turn lane, north of them, a white sedan entered the turning lane and began to use it as a passing lane to overtake the cars in front of it, revving its engine loudly as it approached the children. Jocelyn picked up Kameron and stepped back close to the southbound lane. In the next instant, the sedan struck both children, sending Kameron over the hood of the car and propelling Jocelyn approximately thirty yards down the road. The white sedan, never having applied its brakes, veered back into traffic and sped forward.

Moya, the driver of the sedan, stopped in the Valero fuel station parking lot (a short distance from the accident scene) and checked the damage to his vehicle, which then had a missing passenger side bumper and a damaged headlight. Moya then re-entered Jefferson Avenue, continuing the southward route he had previously been following. He was apprehended and taken into custody at the Walker Creek Apartments in Camp County a few hours later, in the early morning hours of May 8. Moya, who had apparently injured his hand in the interim by punching his fist into a wall, was taken by the arresting officers to a hospital for treatment. After leaving the hospital, Moya was transported to the investigations office of the Mount Pleasant Police Department shortly before 7:00 a.m., where he was administered his *Miranda*[4] warnings by peace officers and interviewed; the interview was recorded and played to the jury. Moya also gave a handwritten statement of his recollection of the accident. This document was likewise

---

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

3

admitted into evidence. Moya was brought before a magistrate only after this interview, the drafting of the statement, and his jailing.

*(1)    Delay in Taking Moya Before a Magistrate*

Moya contends that because he was not taken before a magistrate prior to his custodial interrogation, his handwritten confession and his video-recorded interview by investigating officers should have been excluded from the evidence in his trial. More specifically, Moya claims the investigating officers were remiss and violated Articles 14.06(a) and 15.17 of the Texas Code of Criminal Procedure by not taking him before a magistrate at an earlier stage of the circumstance than they did.[5] TEX. CODE CRIM. PROC. ANN. arts. 14.06(a), 15.17 (West Supp. 2012).

Article 14.06 requires that "the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken *without unnecessary delay*, but not later than 48 hours after the person is arrested, before the magistrate . . . ." TEX. CODE CRIM. PROC. ANN. art. 14.06(a) (emphasis added). Upon being taken before a magistrate, it is the duty of the magistrate to then immediately perform the duties described in Article 15.17 of the Texas Code of Criminal Procedure. Article 15.17 requires the magistrate to provide certain information and issue certain warnings to the arrested person, those things to include (but not being limited to) informing the accused of his right to retain counsel, his right to remain silent, his right to have an attorney present during any interview with peace officers, and of his right to

---

[5]Moya acknowledges that because he was arrested without a warrant, Article 15.18 does not apply. TEX. CODE CRIM. PROC. ANN. art. 15.18 (West Supp. 2012) (addressing arrest pursuant to warrant for out-of-county offense).

4

terminate the interview at any time. The magistrate must also advise the arrested person that he is not required to make a statement and that any statement made may be used against him.[6] TEX. CODE CRIM. PROC. ANN. art. 15.17(a).

It is undisputed that the officers' interview of Moya took place and his written statement was made before he was taken before a magistrate. Moya was arrested between 3:30 and 4:30 a.m. May 8, 2011, after which he was taken by the arresting officer for medical treatment. It was only after having received medical treatment that Moya was interviewed by the arresting officer and provided his written statement. Moya was not taken before a magistrate until after he was booked in at the jail, presumably later that same morning.[7] Moya contends that even though a magistrate was available after his arrest, he was not taken before the magistrate prior to having been interviewed. Accordingly, he maintains that he should have been afforded an opportunity to be advised of his right to request counsel before the interview was conducted and prior to having given his written statement.

What constitutes "unnecessary delay" in taking a suspect before a magistrate depends on the facts of each case. *Ontiveros v. State*, 890 S.W.2d 919, 929 (Tex. App.—El Paso 1994, no pet.) (delay in taking suspect before magistrate not unreasonable in view of evidence that several hours were spent transporting suspect, taking his statement, and attending to other administrative

---

[6]Article 15.17 also reiterates the requirement that the person arrested must be brought before a magistrate without unnecessary delay, but not later than forty-eight hours following the arrest. TEX. CODE CRIM. PROC. ANN. art. 15.17(a).

[7]The record is not clear as to the precise time Moya was actually taken before the magistrate. Sharyn Cary, Chief of the Criminal Investigations Division of the Mount Pleasant Police Department, testified that the magistrate came to the jail, but she did not know the precise time of that visit. Moya does not claim that the delay in seeing a magistrate exceeded forty-eight hours in length and nothing in the record indicates that to be the case.

5

matters). A delay in taking a suspect before a magistrate so the officer can conclude the investigation is not an unnecessary delay. *See Niehouse v. State*, 761 S.W.2d 491, 493–94 (Tex. App.—Dallas 1988, no pet.); *see also Jenkins v. State*, 912 S.W.2d 793, 807 (Tex. Crim. App. 1993) (op. on reh'g) (not unreasonable delay when defendant confessed before taken before magistrate some sixteen hours after arrest although magistrate was available). A police officer testified at trial that it was necessary to provide Moya medical treatment after his arrest. Given that Moya was arrested between 3:30 and 4:30 a.m. and arrived at the police department shortly before 7:00 a.m., it took approximately two and one-half to three and one-half hours to complete medical treatment. Thereafter, Moya was interviewed by the police and provided his written statement, then placed in a jail cell, after which he saw a magistrate. Given these circumstances, we do not find the delay in bringing Moya before a magistrate was unreasonable.

Even should we assume that Moya's appearance before a magistrate was not made in a timely fashion, such failure will not invalidate the evidence here (garnered during Moya's detention) unless there is proof of a causal connection between that delay and the granting of the interview and writing of the statement. *Cantu v. State*, 842 S.W.2d 667, 680 (Tex. Crim. App. 1992); *see also Jones v. State*, 944 S.W.2d 642, 649 n.10 (Tex. Crim. App. 1996). It is Moya's burden to show this causal connection. *See Cantu*, 842 S.W.2d at 680; *Weaver v. State*, 265 S.W.3d 523, 536 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). The record contains no evidence of a causal connection between any failure to take Moya before a magistrate and the interview and statement he gave to the investigating officers. As previously discussed, the

record indicates that any delay in taking Moya before a magistrate was due to the need for Moya to receive medical treatment, together with reasonable procedures necessary to the investigation.

Further, a violation of the requirement that a defendant be taken before a magistrate without delay will not invalidate an otherwise voluntary statement or confession when the arrestee was properly advised of his *Miranda* rights. *Cantu*, 842 S.W.2d at 680; *Boyd v. State*, 811 S.W.2d 105, 125 (Tex. Crim. App. 1991) ("[A] violation of the requirement that a defendant be taken before a magistrate without delay will not invalidate a confession which was voluntarily given after a defendant received his [*Miranda*] rights."). In this circumstance, the fact that a magistrate did not advise Moya of his rights does not mean that he remained unadvised by anyone. Here, Moya was advised of his *Miranda* rights prior to making any statements to the investigating officers. This is evidenced in the video recording of Moya's statement as well as on his signed statement.[8] Based on the foregoing, we conclude that the trial court did not err in admitting Moya's written confession, together with the video recording of Moya's interview with investigating officers.

*(2)     The Evidence of Reckless Conduct is Legally Sufficient*

Moya further claims that the evidence is insufficient to prove that he acted recklessly in causing Jocelyn's death. In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of manslaughter beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979));

---

[8]Prior to giving his statement, Moya executed a written waiver and initialed each of the warnings required by *Miranda*. In addition, each warning was read to Moya, who indicated he understood them.

*Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while keeping in mind that the credibility of witnesses is the sole province of the jury and that we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19); *see Ehrhardt v. State*, 334 S.W.3d 849, 857 (Tex. App.—Texarkana 2011, pet. ref'd).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. The indictment alleges that Moya recklessly caused Jocelyn's death by driving his car "in the turn lane to pass other vehicles that were driving in the southbound lanes of traffic on South Jefferson Avenue . . . ."

The jury charge instructed the jury that Moya committed the offense of manslaughter if he recklessly caused Jocelyn's death.

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard

8

> constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c) (West 2011). The jury was given the foregoing instruction, together with an instruction that "[f]or a person to be deemed 'reckless,' there must actually be both a substantial and an unjustifiable risk that the result complained of will occur and that the person acting was actually aware of such risk and consciously disregarded it."

Moya asserts that there is "no evidence . . . that even suggests that the death of any person would be even remotely probable . . . ." Moya maintains that he could not appreciate the risk of striking children standing in the turn lane of the avenue, because he could not have seen them and he relies for that position on *Johnson v. State*, 207 S.W.2d 871 (Tex. Crim. App. 1948) (per curiam). *Johnson* involved a nighttime accident which occurred as Johnson was driving twenty or twenty-five miles per hour. Johnson's vehicle struck a pedestrian, who either stepped out from between two parked cars or who exited his vehicle in the traffic lane. In determining Johnson did not commit negligent homicide, the court noted that "there must be an apparent danger of causing the death of the person killed or some other." *Id*. at 871. Aside from the fact that the applicable statutes and caselaw have evolved considerably since *Johnson* was decided, the facts here are drastically different than those at issue in *Johnson*. Johnson was proceeding at a low rate of speed when a pedestrian unexpectedly stepped into the roadway. Here, Moya chose to drive in the turning lane around stopped traffic at a high rate of speed.[9]

---

[9]Moya also relies on *Bounds v. State*, 355 S.W.3d 252 (Tex. App.—Houston [1st Dist.] 2011, no pet.), in which Bounds appealed his conviction for deceptive business practices, claiming the evidence was insufficient to prove the requisite mental state—recklessness—as articulated in Section 6.03(c) of the Texas Penal Code. TEX. PENAL CODE ANN. § 6.03(c). Because *Bounds* concerns the issue of whether the appellant, with a mental state of recklessness, sold less than a represented quantity of a property or service, we do not find it helpful to our analysis here.

An actor's culpable mental state is generally shown by circumstantial evidence. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) (en banc). Culpability may be inferred from the acts, words, and conduct of the accused. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Manning v. State*, 84 S.W.3d 15, 20 (Tex. App.—Texarkana 2002), *rev'd on other grounds*, 114 S.W.3d 922 (Tex. Crim. App. 2003) (sufficient evidence of recklessness where driver of eighteen-wheeler truck failed to brake or slow down where warning signs of construction posted up to 3,000 feet before area where traffic stopped). Contrary to Moya's contention, a defendant need not be aware of the specific risk of another's death to commit manslaughter. *Griffith v. State*, 315 S.W.3d 648, 652 (Tex. App.—Eastland 2010, pet. ref'd). In the *Griffith* case, the evidence was sufficient to support the jury's finding of recklessness when the defendant (despite being intoxicated) commenced operation of his van quite after the victim exited the vehicle, striking her with the van. *See also Arellano v. State*, 54 S.W.3d 391, 393 (Tex. App.—Waco 2001, pet. ref'd) (sufficient evidence of recklessness where there were multiple visible signs warning of need to reduce speed posted before dangerous curve and skid marks showed excessive speed); *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref'd) (finding sufficient evidence of recklessness when driver struck bicyclist after moving to shoulder to attempt to pass traffic on right).

Here, Jason Parker, a witness to the events in question, was traveling in the southbound, inside lane of south Jefferson on the evening of the accident. Parker noticed people standing on the side of south Jefferson under a street lamp at the corner where the cinema and Catfish King restaurant were located, and he observed that the traffic on the road had slowed to almost a

complete stop.  Because Parker had his window down as he was traveling slowly or stopped with the other traffic, he could hear a car coming up on his left with the engine revving up.  There were no other vehicles other than the one driven by Moya traveling in the turn lane going around the stopped traffic.  Even though there was a car in front of him, Parker was able to see the two children in the turn lane as the traffic commenced, once again, flowing in the northbound lane. At the time of the accident, the area was well-lit by street lights.  He noticed the two children standing in the turn lane as they waited for the northbound traffic to abate somewhat before completing their course across the street.[10]  Parker saw a white vehicle pass him suddenly on the left side of his automobile in the turn lane, traveling quickly.  As Parker watched, he saw Jocelyn pick up the smaller child, Kameron, immediately before the white vehicle struck both children. Parker did not observe any attempt by the driver of the white vehicle to slow or stop; rather, it veered back into moving traffic and continued south.

As Allison Cain was leaving the cinema at approximately 11:00 p.m. on the night of the accident, she noticed two children cross both southbound lanes of traffic into the center lane. The southbound traffic had come to a stop to allow the children to cross the heavily trafficked avenue.  As the children were standing in the center lane, Cain heard a loud noise like a car revving up.  She saw Jocelyn grab Kameron just before the white car, traveling in the center lane, struck both of the children.  The white car did not brake prior to impact and continued traveling south after impact.

---

[10]There was no crosswalk or traffic light in the area where the children crossed the avenue.

The jury was entitled to take into account that Moya had, during the course of the evening (and before striking the two children) consumed approximately six beers and then drove his car. *See Rubio v. State*, 203 S.W.3d 448, 452 (Tex. App.—El Paso 2006, pet. ref'd) (driving under influence of alcohol can be used to show conscious disregard of substantial risk).

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Moya acted recklessly when, after consuming alcohol, he voluntarily created (and then chose to disregard) a substantial and unjustifiable risk in skirting around stopped traffic by passing the other vehicles in the turn lane, simultaneously driving his car faster than the prevailing traffic flow.

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     March 28, 2013
Date Decided:       April 3, 2013

Publish

12