

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00617-CR

FRANK EDWARD BYRD III                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Frank Edward Byrd III appeals from his conviction for murder. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND[2]

Appellant and Nora Price were involved in a romantic relationship but, because of their habit of smoking methamphetamine, had an unstable living arrangement. In December 2011, Appellant and Price met Hilary Eaton, who offered to let Appellant and Price move into her home. On January 4, 2012, Appellant argued with Eaton and shot her to death with a rifle. Both Price and Appellant left, and Appellant threw the rifle out of the car window. Eaton's body was discovered early on January 7.

During the ensuing investigation, police officers found Appellant's and Price's names written on a notepad in Eaton's home. Detective Jerry Cedillo called Appellant on January 8, and Appellant agreed to meet with him the next morning—January 9. Appellant did not show up for the meeting. Later that same day, two friends of Appellant's contacted Cedillo and informed him that Appellant wanted to talk. Cedillo again called Appellant, who agreed to meet that evening. Appellant kept this appointment and, after receiving the required warnings, gave a two-hour, videotaped statement to Cedillo and agreed to give a DNA sample. *See* Tex. Code Crim. Proc. Ann. arts. 15.17, 38.22, § 2 (West Supp. 2013). Appellant did not attempt to invoke any of his rights during the interview. To the contrary, Appellant told Cedillo that he had a lawyer but wanted

---

[2]Because Appellant does not challenge the sufficiency of the evidence, we recite the facts only to the extent needed to place his appellate arguments in context.

to talk without his attorney present.[3] Cedillo asked Appellant if he was "high" before starting the interview, but Appellant stated he was "more tired." Cedillo, who was experienced with determining "whether somebody is intoxicated because of drugs or unable to appreciate . . . what's going on around them," did not believe Appellant was impaired. During his statement, Appellant gave conflicting versions of what happened on January 4, but admitted he fired the rifle that killed Eaton. Appellant was arrested at the conclusion of the interview.

On January 15, Appellant's mother contacted Cedillo and told him that Appellant wanted to speak to Cedillo again "to give [him] the whole story about what took place." Cedillo checked with the jail and discovered that Appellant did not have an appointed attorney. On the morning of January 18, Cedillo went to the jail and interviewed Appellant for approximately one hour after Appellant again heard and waived his rights. That same day at 12:57 p.m.—six days after his arrest—Appellant appeared before a magistrate and was appointed counsel.

On January 12, 2012, a grand jury indicted Appellant for the murder of Eaton and included a repeat-offender notice based on Appellant's 1996 conviction for aggravated sexual assault of a child. Appellant filed a pretrial motion to suppress his two statements. After a hearing, the trial court

---

[3]Appellant had been indicted on August 25, 2011, with failure to register as a sex offender and had been appointed counsel in that case on September 2, 2011.

determined that the statements had been voluntarily given, and overruled the motion:

> I had to sit through two and a half hours of [the January 9] interview and believe that the facts would allow any lay person, which I think is a standard that should apply, to draw [a] conclusion whether the person conducting the interview and responding to the interview has their wits about them, has the wherewithal to understand and answer questions and the wherewithal morally and legally and factually to make a free and voluntary decision to talk or not talk, to cooperate or not cooperate. . . .
>
> . . . The person has to be aware, awake and alert enough to make reasonable, rational, legal decisions to cooperate or not cooperate, but they don't have to be in Olympic athlete form. They may have to be wide awake, but they don't have to be bright-eyed and bushy-tailed to boot.
>
> And so as a matter of fact, as a matter of law, I find that the Defendant on January the 9th was not under the influence of fatigue or controlled substance or any combination thereof such to the extent he was unable to make a free and voluntary decision. I find that he was in fact capable to do so and that is evidenced by the manner and nature in between or notwithstanding sometimes erratic or bizarre behavior. . . . Whether it may have been at the edges affected by fatigue or substance abuse, I saw a human being reacting like a human being under stress, expected normal stress, would act but nothing that would prohibit a free and voluntary waiver or proscribed admissibility of his statement or his comments, because they were so far outside the norm as to breach a constitutional threshold as I've seen reliable.
>
> So on the basis of the January 9th part of the [statements] . . . as to the statutory and constitutional challenges with a heavy emphasis on the voluntariness and the sobriety and appropriateness of your client to be able to waive rights, . . . I find as a matter of fact and law those arguments fail.
>
> . . . .
>
> And circumstantially getting to the second interview, there's evidence to support the first interview was voluntary because the

4

second interview was requested and he apologized for basically pulling the detective's chain in the first interview, and right off the bat, and at the end offered to take a polygraph to prove that what I've told you today in the second interview is for real so you don't think I'm pulling your chain again like I kept doing the first time, which shows he had his wits about him in what was going on and offered circumstantial evidence that the reason for the changing versions of the first interview aren't that he's high, it's that he's evasive, or else there would be no need to apologize for it or offer to take a lie detector test to prove I've given you the real story today. And if it would have been because he's fatigued or high he wouldn't have that, to his credit, moral compunction to say I want to make things right and want you to know you can trust what I've told you today. . . .

So to [defense counsel's] credit, circumstantially that might be looked at to say maybe he wasn't himself the first interview and I will agree he wasn't his peak self at the first but he was constitutionally okay, which is a difference. The second interview he was approaching that Olympic athlete and was in as good a shape as any interview of any person I've ever seen.

And as a matter of fact and law, I find the second interview was freely and voluntary participated in and his statements given therein were freely and voluntary under statutory and constitutional provisions . . . .

At trial, the State played the videos of Appellant's two statements to the jury. After the State and Appellant rested and closed their evidence, Appellant requested a jury instruction on mistake of fact: "[I]f you find . . . or have a reasonable doubt thereof that the defendant through mistake formed a reasonable belief about whether the gun was loaded and that his mistaken belief negated the kind of culpability required for commission of the offense, then you will find the defendant not guilty of murder." *See* Tex. Penal Code Ann. § 8.02 (West 2011). The trial court denied Appellant's request. The jury found

5

Appellant guilty of Eaton's murder. Appellant pleaded true to the repeat-offender notice, the jury heard punishment evidence and, after being charged by the trial court, the jury assessed Appellant's sentence at life confinement. This appeal followed.

## II. ADMISSIBILITY OF STATEMENTS

In his first two points, Appellant argues that the trial court erred by overruling his motion to suppress his statements. We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). Under Texas law, a statement is admissible if it was freely and voluntarily given. Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005).

As recounted above, the trial court viewed the videotape of Appellant's January 9 statement and heard Cedillo's testimony. The videotape and Cedillo's testimony supported and were the bases of the trial court's conclusion that Appellant was not impaired but freely and voluntarily waived his rights and gave an inculpatory statement. We defer to these rulings turning on the court's evaluation of credibility and demeanor. Viewing the totality of the circumstances,

6

we conclude that the trial court did not err in holding that Appellant's January 9 statement was free and voluntary. *See Leza v. State*, 351 S.W.3d 344, 352–53 (Tex. Crim. App. 2011) (deferring to trial court's conclusion, which was supported by the record, that confession was voluntary even though evidence showed defendant injected heroin before arrested); *Penry v. State*, 903 S.W.2d 715, 744–46 (Tex. Crim. App.) (holding confession of mentally impaired defendant voluntary based on trial court's findings that defendant was repeatedly read his rights, understood them, was not coerced, and gave two inculpatory statements), *cert. denied*, 516 U.S. 977 (1995); *Franks v. State*, 90 S.W.3d 771, 785–86 (Tex. App.—Fort Worth 2002, no pet.) (holding mentally impaired defendant voluntarily gave inculpatory statement based on evidence that defendant understood his rights and the effect of their waiver and no evidence of coercion or intimidation).

We also conclude that Appellant's January 18 statement was voluntary and admissible. Appellant asserts that his statement was per se involuntary because he was not "taken before" a magistrate within 48 hours of his arrest and informed of his due process and Fifth Amendment rights. Tex. Code Crim. Proc. Ann. art. 15.17(a). Specifically, Appellant argues that when Cedillo checked to see if Appellant had been appointed an attorney on the murder charge, "Appellant *should* have had an attorney by then, and the fact that he did not have an attorney by that date is not Appellant's fault, but rather the fault of the government." This failure, Appellant contends, "undermines any voluntariness of the waiver elicited at the January 18 interview."

7

The failure to take an accused before a magistrate under article 15.17 does not invalidate a confession unless there is proof of a causal connection between the delay and the confession. *Boyd v. State*, 811 S.W.2d 105, 124–25 (Tex. Crim. App.), *cert. denied*, 502 U.S. 971 (1991). Appellant has failed to show any connection between the State's failure to take him before a magistrate and the statement he gave to Cedillo on January 18. Appellant's mother contacted Cedillo to tell him Appellant wanted to make another statement to "give . . . the whole story." Even though Cedillo confirmed that counsel had not yet been appointed to represent Appellant, he again informed Appellant of his rights under article 38.22, and Appellant again waived those rights and gave an inculpatory statement. These facts, as heard by the trial court and to which we defer, do not show that the State's failure to take Appellant to a magistrate under article 15.17 caused him to give his January 18 statement. The failure to comply with article 15.17, therefore, did not render Appellant's January 18 statement involuntary. *See Cantu v. State*, 842 S.W.2d 667, 680 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993); *Moya v. State*, No. 06-12-00121-CR, 2013 WL 1341078, at *3 (Tex. App.—Texarkana Apr. 3, 2013, no pet.). Further, Appellant did not argue to the trial court either in his motion to suppress or at the hearing on his motion that his January 18 statement was involuntary as a result of the lack of compliance with article 15.17. This failure forfeits any possible error from our review. *See* Tex. R. App. P. 33.1(a); *Lyssy v. State*, No. 01-12-00898-CR, 2014 WL 714924, at *3 (Tex. App.—Houston [1st Dist.] Feb. 6, 2014, no pet.).

8

We overrule Appellant's first two points.

### III. MISTAKE OF FACT

In his fourth point, Appellant argues that the trial court erred by denying his requested jury instruction on mistake of fact, which was raised by his statements to police that he did not know the rifle was loaded.

First, this argument was inadequately briefed. After setting out the standard justifying the submission of a defensive issue, Appellant summarily asserted that he raised the defense of mistake of fact: "[E]ven though Appellant told police multiple versions of his view of what happened, his statements (offered into evidence by the State) did raise mistake of fact; and the trial court erred when it overruled the properly requested instruction." Appellant includes no citation to the record or any further exposition of the specific content of his statements and how those specific statements sufficiently negated the charged culpable mental states as required by section 8.02(a). *See* Tex. Penal Code Ann. § 8.02(a). Given that Appellant's two statements, combined, lasted for three hours, Appellant's conclusory argument is insufficient. *See* Tex. R. App. P. 38.1(i); *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000).

Second, even if Appellant's point were adequately briefed, we would conclude that the trial court did not err by failing to instruct the jury on mistake of fact. It is a defense to prosecution that the actor formed a reasonable but mistaken belief about a matter of fact if that mistaken belief negated the applicable culpable mental state. Tex. Penal Code Ann. § 8.02(a); *see also id.*

9

§ 2.03 (West 2011). A reasonable belief is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42) (West Supp. 2013). When an accused presents evidence to raise the issue of mistaken belief as to the culpable mental state, he is entitled to a defensive instruction on mistake of fact. *Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999). But if the evidence, viewed in a light favorable to the appellant, does not establish a mistake-of-fact defense, an instruction is not required. *Id.* at 38.

Appellant was charged with intentionally or knowingly causing Eaton's death. Therefore, Appellant had to produce some evidence that his reasonable yet mistaken belief that the rifle was unloaded negated these culpable mental states. In his second statement to Cedillo, Appellant admitted that he had loaded the rifle earlier that same day but "wasn't even sure if it was loaded" before he shot Eaton. The trial court explained that it denied Appellant's requested mistake-of-fact instruction because Appellant did not proffer any evidence that he reasonably believed the rifle was not loaded:

> Defense . . . asks for a charge on mistake of fact about a reasonable belief that the firearm was unloaded and, therefore, if so the Defendant should be acquitted. Based on the evidence before me, the totality of the evidence, the reasonable belief standard, and the closest [Appellant's] language got to [regarding whether] the gun [was] loaded or not [was] I've loaded, I unloaded, I don't know if it was loaded or not, might have been loaded, I have loaded or unloaded, uncertainty on the part of the accused throughout it, under the best interpretation to his viewpoint, there is no statement that says I had a reasonable belief that the gun was unloaded, not just bringing out the possibility it may have been, may not have been.

10

And to get mistake of fact, based on the evidence and the law that I've researched, it's not raised that there's a reasonable belief that the gun actually was unloaded versus just throwing out that possibility, which is different than the legal standard.

Although a defendant's testimony alone may be sufficient to raise a defense, the proffered evidence must at least reasonably negate the culpable mental state required. *See Brown v.* State, 955 S.W.2d 276, 279–80 (Tex. Crim. App. 1997). Here, Appellant's supposition that the rifle might have been or might not have been loaded does not equate to evidence that he had a reasonable belief that the rifle was not loaded when he pointed it at Eaton, negating the charged culpable mental states. *See Thibodeaux v. State*, 726 S.W.2d 601, 604 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). Appellant's statement was too nebulous to constitute evidentiary support for a mistake-of-fact instruction even after viewing this evidence in the light most favorable to Appellant. *See, e.g.*, *Mays v. State*, 318 S.W.3d 368, 383–84 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 1606 (2011); *Hill v. State*, 765 S.W.2d 794, 795–97 (Tex. Crim. App. 1989); *Maupin v. State*, 930 S.W.2d 267, 268–69 (Tex. App.—Fort Worth 1996, pet. ref'd); *see also Solis v. State*, No. 13-00-680-CR, 2002 WL 34249731, at *2 (Tex. App.—Corpus Christi Apr. 25, 2002, no pet.) (not designated for publication). Accordingly, it was not error to deny the requested instruction, and we overrule Appellant's fourth point.

## IV.  PUNISHMENT CHARGE

In his third point, Appellant argues that the verdict form provided to the jury in the charge on punishment was in error because it did not require the jury to find that the repeat-offender notice was, in fact, true.  In the trial court's charge on punishment, the trial court informed the jury that Appellant had pleaded true to the repeat-offender notice in the indictment and instructed the jury "to find 'true' the allegations of the Repeat Offender Notice of the indictment and assess the [applicable] punishment."  The verdict form provided, "We, the Jury, having found [Appellant] guilty of the offense of murder, assess his punishment at confinement . . . for _____."  Underneath the blank was the phrase "(term of years 15-99 or life)."  Appellant contends that because the jury never made an express finding that the notice was true, the stated punishment range was incorrect.  Although Appellant did not object to the verdict form at trial, we are charged with determining whether any error occurred and, if it did, whether that error resulted in egregious harm to Appellant.[4]  *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005).

In making an egregious-harm determination, we analyze any harm in light of the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record.  *See Almanza v. State*, 686 S.W.2d

---

[4]We note that the State's argument that Appellant waived any objection to the verdict form is incorrect.  *See Jennings v. State*, 302 S.W.3d 306, 307, 310–11 (Tex. Crim. App. 2010) (holding all jury-charge errors, including errors in the verdict form, are reviewable on appeal).

157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Here, Appellant pleaded true to the repeat-offender notice and acknowledged that the jury would be instructed "to find that true without any additional evidence." Neither Appellant nor the State made any reference to the repeat-offender notice in their closing jury arguments on punishment. Indeed, the jury had no choice but to find the repeat-offender notice true and consider a punishment range of 15 to 99 years or life. We conclude that any possible error arising from the verdict form was not egregiously harmful. *See Cartwright v. State*, 833 S.W.2d 134, 136–37 (Tex. Crim. App. 1992) (holding jury charge allowing jury to consider fine higher than that allowed did not cause egregious harm because fine assessed was within lawful range); *cf. Quesada v. State*, 398 S.W.3d 731, 733–34 (Tex. App.—San Antonio 2009, no pet.) (finding egregious harm arising from punishment charge that precluded jury from considering full range of available punishment). We overrule point three.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his fifth point, Appellant asserts that his trial counsel was constitutionally ineffective because he failed to properly preserve error after an objectionable veniremember was seated on the jury. Specifically, Appellant's trial counsel challenged one veniremember for cause on the grounds that he was prejudiced against Appellant based on Appellant's tattoos and that he could not consider the minimum punishment. After the trial court asked the veniremember further questions on these issues, the veniremember said he could keep an open mind

13

on the range of punishment. The trial court denied the challenge for cause. Appellant argues trial counsel was deficient because he failed to properly preserve error arising from the trial court's denial. *See Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010) (explaining procedure to preserve error from the trial court's erroneous denial of a challenge for cause) *cert. denied*, 132 S. Ct. 128 (2011).

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). In other words, for a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped.

14

*Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813. This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 813. It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Here, the record is silent regarding counsel's reasons for failing to strike the objectionable veniremember or properly preserve error if he had exhausted all strikes before he could strike the veniremember. Indeed, the record does not contain a strike list showing those veniremembers that were stricken by peremptory challenge, whether trial counsel ran out of strikes before he got to the objectionable veniremember, or whether trial counsel chose not to exercise a peremptory strike on that veniremember. Nothing in the record suggests that counsel's failure to act is so outrageous that we may conclude that no competent attorney would have failed to strike the objectionable veniremember or request

15

additional strikes, nor may we speculate as to counsel's reasons for failing to object to the denial of his challenge for cause. *See Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994). That being the case, Appellant has failed to show by a preponderance of the evidence that counsel was deficient. *See Ex parte McFarland*, 163 S.W.3d 743, 758 (Tex. Crim. App. 2005); *Bone v. State*, 77 S.W.3d 828, 830, 836–37 (Tex. Crim. App. 2002); *Delgado v. State*, No. 01-07-00471-CR, 2008 WL 920490, at *6 (Tex. App.—Houston [1st Dist.] Apr. 3, 2008, no pet.) (mem. op., not designated for publication). The absence of a record on this point indicates that his allegation would be more appropriately pursued in a post-conviction writ of habeas corpus to allow record development. *See Rylander*, 101 S.W.3d at 110–11 & n.1. We overrule issue five.

## VI. CONCLUSION

Having overruled Appellant's points, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel
LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 17, 2014